**2009 BNH 005**     Note:   This is an unreported opinion.  Refer to LBR 1050-1 regarding citation.
_____

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

In re:                                                                                         Bk. No. 08-10442-JMD
                                                                                                    Chapter 7
Daniel J. Raineri, Sr.,
            Debtor


Cyr Lumber Co., Inc.,
            Plaintiff

v.                                                                                                 Adv. No. 08-1072-JMD

Daniel J. Raineri, Sr.,
            Defendant


*Sean P. O'Leary, Esq.*
*Shaheen Guerrera & O'Leary, LLC*
*North Andover, Massachusetts*
*Attorney for Plaintiff*

*Thomas Morgan, Esq.*
*Law Office of Thomas Morgan*
*Salem, New Hampshire*
*Attorney for Debtor/Defendant*


## MEMORANDUM OPINION

### I. INTRODUCTION

On January 6, 2009, the Court conducted a trial on a complaint filed by Cyr Lumber Co., Inc. ("Cyr Lumber") against Daniel J. Raineri, Sr. (the "Debtor") seeking to except from discharge under 11 U.S.C. § 523(a)(2)(A) and (B), the Debtor's obligation to Cyr Lumber. At the conclusion of Cyr Lumber's case, the Debtor moved to dismiss Cyr Lumber's claim under §

523(a)(2)(B).  The Court granted the motion as Cyr Lumber failed to establish an entitlement to relief under this section of the Bankruptcy Code.  Accordingly, the Court has before it only Cyr Lumber's claim under § 523(a)(2)(A).

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.).  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II.  FACTS

On or about January 16, 2004, the Debtor formed Granite State Homeworks, LLC ("Granite State") for the purpose of engaging in the home improvement and remodeling business.  The Debtor was Granite State's sole member and manager.  On or about July 30, 2004, the Debtor, on behalf of Granite State, applied for a credit line with Cyr Lumber which application was approved on August 4, 2004, with an opening credit limit of $5,000.00.  The Debtor personally guaranteed Granite State's credit line with Cyr Lumber as Cyr Lumber required.  In signing the credit application, Granite State agreed "[t]o pay a finance charge of 2% with a minimum charge of $1.00 for all balances remaining unpaid 30 days after month of purchase and every month thereafter."  Granite State further agreed that "in the event any balance, past due or contested, is placed in the hands of a collection agency or attorney for collection, to guarantee payment of all reasonable charges for collection including the amount due and owing for any default."

Cyr Lumber billed Granite State on a monthly basis with bills being issued on the first of the month for charges made the previous month with payment being due on the last day of the

2

current month, e.g., on August 1, 2006, Cyr Lumber billed Granite State for charges made during the month of July 2006, with payment being due on August 31, 2006. Granite State's August 2006 bill showed an outstanding balance of $791.79, representing charges made in July 2006. Granite State paid this amount on or about August 9, 2006. The Debtor testified that on or about that date, he had a conversation with Donna Cyr, the office manager for Cyr Lumber, in which he informed her that Granite State was filing bankruptcy and that he wanted to continue the credit line in his own name. The Debtor indicated that Ms. Cyr said this was acceptable as long as Granite State "zeroed out" its account with Cyr Lumber. The Debtor testified that he had similarly discussed using a guaranteed line of credit with Benson Lumber, another lumber company that supplied materials to Granite State, and similarly was told that if the account were zeroed out, the Debtor could continue to use the account as his own since he had guaranteed it and was responsible for paying it.

Ms. Cyr testified that the Debtor never informed her that Granite State intended to file bankruptcy and, if he had, she would have informed Kevin Cyr, the president of Cyr Lumber, and Granite State's credit line would have been terminated. She testified further that if the Debtor had wanted to maintain an account with Cyr Lumber in his own name, he would have been required to fill out a new credit application. According to Mr. Cyr, when a customer files bankruptcy, the customer's credit line is terminated and purchases then must be made on a cash basis.

On September 8, 2006, Granite State filed chapter 7 bankruptcy. At the time Granite State filed bankruptcy, Cyr Lumber was owed $5,616.60 for charges made between August 11, 2006, and September 8, 2006, despite no bill having yet been issued by Cyr Lumber for the September charges. Granite State did not list Cyr Lumber as a creditor on its schedules. As a

3

result of not having been listed as a creditor on Granite State's bankruptcy schedules, Cyr Lumber did not receive notice of Granite State's bankruptcy. Granite State did list Cyr Lumber on its statement of financial affairs as a creditor that received a payment of $791.79 within ninety days of the bankruptcy filing.

After Granite State filed bankruptcy, the Debtor continued to work in the residential construction business on his own account and continued to buy materials at Cyr Lumber, using the account opened by Granite State. Between September 11, 2006, and December 31, 2006, the Debtor incurred new charges of $5,633.78 in September, $21,445.62 in October, $14,982.83 in November, and $4,634.76 in December. The account was apparently closed on December 31, 2006. During these months, the Debtor continued to sign invoices for materials in the same manner he had prior to Granite State discontinuing its business in August 2006 and filing bankruptcy in September 2006, with the invoices showing goods being "sold to" "Granite State Home Works." While the Debtor apparently requested that the address on the account be changed to his home address, which change was made in Cyr Lumber's system on either September 26 or 27, 2006, it appears the Debtor never informed Cyr Lumber that Granite State was out of business or that he should be billed personally for materials purchased.

During the fall of 2006, after Granite State filed bankruptcy, the Debtor made just two payments to Cyr Lumber, one in the amount of $2,500.00 on or about September 28, 2006, and another in the amount of $5,000.00 on or about October 27, 2006. The account received various credits for returned materials totaling $1,281.82 during this time. The balance due as of December 31, 2006, was $44,844.87. On January 25, 2007, the account received a $9,262.02 credit based upon a homeowner's direct payment for kitchen cabinets, a custom laminate top,

4

and a kitchen installation.  This reduced the outstanding balance owed to Cyr Lumber to $35,582.85.

Cyr Lumber learned of Granite State's bankruptcy in January 2007, when it began collection activities.  That month Cyr Lumber filed suit against the Debtor in state court seeking damages under a number of legal theories, including unjust enrichment, fraud, and misrepresentation.  The state court suit was stayed upon the Debtor filing an individual chapter 7 bankruptcy petition on March 6, 2007.  The Debtor's bankruptcy case was eventually dismissed because the Debtor was not eligible to receive a discharge in that case as he had previously filed another chapter 7 bankruptcy case within eight years.[1]

On February 21, 2008, the Debtor re-filed chapter 7 bankruptcy.  He listed Cyr Lumber as an unsecured creditor owed $44,844.87.  Cyr Lumber claims it is owed $77,963.72 as of January 16, 2009, consisting of $57,232.78 in charges and interest through January 1, 2009, $18,931.50 in legal fees as of January 16, 2009, and $1,799.44 in costs through January 6, 2009.

## III.  DISCUSSION

Cyr Lumber seeks to have the Debtor's obligation to it excepted from discharge pursuant to § 523(a)(2)(A) of the Bankruptcy Code.  Section 523(a)(2)(A) provides:

> A discharge under [the various discharge sections] of this title does not discharge an individual debtor from any debt–
>
> (2) for money, property, services or an extension, renewal, or refinancing of credit, to the extent obtained by–

---

[1] Section 727(a)(8) of the Bankruptcy Code provides that the Court shall grant the debtor a discharge "unless . . . the debtor has been granted a discharge under this section . . . in a case commenced within 8 years before the date of the filing of the petition."

5

>     (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . .

11 U.S.C. § 523(a)(2)(A).  Exceptions to discharge, and thus § 523(a)(2)(A), are to be narrowly construed and construed in favor of the debtor.  See Palmacci v. Umpierrez, 121 F.3d 781, 786 (1st Cir. 1997).  For that reason, a creditor must show that its "claim comes squarely within an exception enumerated in Bankruptcy Code § 523(a)."  Id. at 786; see also McCrory v. Spigel (In re Spigel), 260 F.3d 27, 32 (1st Cir. 2001).  To make out a § 523(a)(2)(A) claim, all of the following elements must be proven:

1. The debtor made a knowingly false representation or made one in reckless disregard for the truth;

2. The debtor did so with fraudulent intent (i.e., scienter);

3. The debtor intended to induce the creditor to rely on the misrepresentation;

4. The misrepresentation actually induced reliance;

5. The reliance was justifiable; and

6. The creditor sustained damage as a result of the creditor's reliance on the misrepresentation.

See Spigel, 260 F.3d at 32; Palmacci, 121 F.3d at 786; Century 21 Balfour Real Estate v. Menna (In re Menna), 16 F.3d 7, 10 (1st Cir. 1994); Commerce Bank & Trust Co. v. Burgess (In re Burgess), 955 F.2d 134, 140 (1st Cir. 1992); Gem Ravioli, Inc. v. Creta (In re Creta), 271 B.R. 214, 217 (B.A.P. 1st Cir. 2002); Reilly v. Beeman (In re Beeman), 225 B.R. 522, 528 (Bankr. D.N.H. 1998).  The burden of proving each element rests with the party contesting the dischargeability of the debt, i.e., normally the creditor.  See Palmacci, 121 F.3d at 787; Grogan v. Garner, 498 U.S. 279, 283 (1991).  The standard of proving each element is by a preponderance of the evidence.  See Grogan, 498 U.S. at 291.

### A. False Pretense or Representation

The false pretense or representation under § 523(a)(2)(A) need not be made in writing for a debt to be excepted from discharge. Rather, the representation under § 523(a)(2)(A) may be spoken or may even be made by way of silence. Frankford Bank v. Chryst (In re Chryst), 177 B.R. 486, 493 (Bankr. E.D. Pa. 1994). "Bankruptcy courts have overwhelmingly held that a debtor's silence regarding a material fact can constitute a false representation actionable under section 523(a)(2)(A)." Caspers v. Van Horne (In re Van Horne), 823 F.2d 1285, 1288 (8th Cir. 1987). The failure to disclose material information can constitute a "false representation" or "false pretense" under § 523(a)(2)(A). Fowler Brothers v. Young (In re Young), 91 F.3d 1367, 1374 (10th Cir. 1996); see also Kukulka-Stone v. Ekrem (In re Ekrem), 192 B.R. 982, 992 (Bankr. C.D. Cal. 1996) ("An omission of material fact is also actionable for the purposes of § 523(a)(2)(A)."); Heinold Hog Market, Inc. v. Hogan (In re Hogan), 38 B.R. 922, 924 (Bankr. E.D. Mo. 1984) ("Failure to disclose a material fact–or, put another way, silence as to, or concealment of, a material fact–may constitute fraud within the meaning of § 523(a)(2)(A).").

In the instant case, the parties dispute whether the Debtor ever informed Cyr Lumber that Granite State was ceasing operations and filing bankruptcy. The Debtor claims that he informed Cyr Lumber of such facts in a telephone conversation on or about August 7, 2006, pursuant to which he paid the Granite State account in full on or about August 9, 2006. Cyr Lumber denies such a disclosure was made. The Court finds the Debtor's version of events is not supported by the record.

First, while the Debtor may have made a phone call to Cyr Lumber on or about August 7, 2006, the Court finds that phone call was made only to inquire as to Granite State's account balance and not to inform Cyr Lumber that Granite State would be filing bankruptcy. Based on

7

the Debtor's testimony, the Court believes that the Debtor previously had a conversation with someone at Benson Lumber who described what would happen if Granite State were to cease business and was told that if he zeroed out the account with Benson Lumber, the Debtor could continue to use that account as his own. The Court believes the Debtor assumed that Cyr Lumber operated in the same manner as Benson Lumber and therefore he decided to zero out the account with Cyr Lumber based upon the conversation with someone at Benson Lumber and not based upon a conversation with anyone at Cyr Lumber. The Court credits the testimony of both Ms. Cyr and Mr. Cyr who testified the Granite State account would have been terminated immediately, in accordance with Cyr Lumber's policy, had either of them been informed that Granite State had filed or was planning to file bankruptcy. Because the account was not terminated in August or September 2006, the Court finds that Cyr Lumber was never informed of Granite State's bankruptcy during the Debtor's August 2006 phone call.

Second, the Debtor never listed Cyr Lumber as a creditor on Granite State's bankruptcy petition, despite listing other lumber companies and suppliers, including Benson Lumber which was owed $15,093.00. This suggests the Debtor did not want to provide notice of the bankruptcy filing to Cyr Lumber. The Debtor indicates he did not list Cyr Lumber because he believed Granite State had no obligation to Cyr Lumber at the time it filed bankruptcy, the account having been zeroed out and transferred to him prepetition. While this explanation is plausible, the Court finds it equally plausible and actually more likely that this omission was done deliberately to keep Cyr Lumber from finding out that Granite State had terminated its business and filed bankruptcy.

Third, while Cyr Lumber made a change to the address on the account in September 2006, no similar change was made to the name of the account holder, leading the Court to conclude that no name change was ever requested by the Debtor.

Fourth, despite signing close to a hundred invoices during the fall of 2006, all of which indicated goods were being sold to "Granite State Home Works," the Debtor never informed Cyr Lumber that Granite State was out of business and that in fact the goods were being sold to and used by the Debtor in his personal capacity.

By failing to disclose the fact that Granite State was in bankruptcy, the Debtor allowed Cyr Lumber to think the company was still in business. The Court finds this non-disclosure by the Debtor constitutes a material omission actionable under § 523(a)(2)(A). For that reason, the Court concludes the Debtor was making purchases under false pretenses when he charged materials to Granite State's account with Cyr Lumber during the fall of 2006.

### B. Intent to Deceive and Induce Reliance

A debtor's intent to deceive may be, and is, implied from the totality of the circumstances. Palmacci, 121 F.3d at 789; Hogan, 38 B.R. at 925. "Intent to deceive under [§ 523(a)(2)(A)] may be inferred from the totality of the circumstances . . . [T]he scienter requirement of subsection (a) may be established by material omissions." Columbia State Bank, N.A. v. Daviscourt (In re Daviscourt), 353 B.R. 674, 685 (B.A.P. 10th Cir. 2006). Thus, the holding back of material information with the intent to mislead a creditor is sufficient to find intent to deceive under § 523(a)(2)(A). Id.

In Daviscourt, the debtor made numerous false representations and regularly held back material information regarding a construction job, which were intended to mislead the bank as to the actual status of the job and were done knowingly and with the intent to obtain more funds

9

than the debtor's company was entitled to under the terms of a line of credit.  Id.  For that reason and having found the other elements of § 523(a)(2)(A) present in the case, the Daviscourt court concluded that the debtor's guarantee liability should be excepted from discharge.

In this case, the Debtor testified that prior to bankruptcy he had purchased the majority of Granite State's materials through Benson Lumber.  The Debtor testified that post-bankruptcy he purchased more of his materials at Cyr Lumber on the line of credit and from Home Depot with a credit card since he was unable to purchase materials at other stores as he had no personal lines of credit or guarantee accounts.  It appears from Granite State's bankruptcy schedules that the Debtor was unable to zero out the Benson Lumber account prior to bankruptcy as Benson Lumber was listed on the schedules as being owed more than $15,000.00.  The Court infers that the Debtor did not inform Cyr Lumber of Granite State's bankruptcy because he needed to keep an open line of credit at a place where he could purchase construction materials.  The Court finds that the Debtor intended to deceive Cyr Lumber when it failed to notify it that Granite State was no longer in business and had filed for bankruptcy, and the Debtor intended to induce Granite State to rely upon this omission so that it would continue to extend credit for the purchase of goods and materials, which the Debtor needed to complete various jobs, including one he was working on in Salem, New Hampshire.

### C. Actual and Justifiable Reliance

"[T]o invoke section 523(a)(2)(A) the claimant must also show that he 'actually and justifiably relied' on the false statement or statements."  Lentz v. Spadoni (In re Spadoni), 316 F.3d 56, 57 (1st Cir. 2003).  "Actual reliance" requires a creditor to have relied in fact on the false statement or omission.  "Justifiable reliance" is a less demanding standard than "reasonable reliance" and requires an examination of whether the falsity of the statement or the omission was

or should have been readily apparent to the creditor. Spadoni, 316 F.3d at 59; see Field v. Mans, 516 U.S. 59, 73-74 (1995); Spigel, 260 F.3d at 32 n.6.

It is apparent Cyr Lumber actually relied upon the Debtor's material omission. Due to the Debtor's failure to disclose the status of Granite State's business, Cyr Lumber continued to supply credit to Granite State and the Debtor. Both Ms. Cyr and Mr. Cyr testified that had they been aware that Granite State had filed bankruptcy, the account would have been terminated immediately and, if the Debtor had wanted to change the account to an account in his name, he would have been required to fill out a new credit application in accordance with store policy.

The Debtor argues that any reliance by Cyr Lumber on Granite State's or the Debtor's ability to pay was not justifiable since the account had a $5,000.00 credit limit, which the Debtor exceeded. Ms. Cyr testified that the account was opened with a $5,000.00 credit limit, but this amount was just a guideline. Mr. Cyr indicated that it was not uncommon for an account to go over the limit, which would result in the account being examined by Cyr Lumber from time to time. The Court finds the Debtor's argument without merit as the false pretense at issue is not the Debtor's representation that he had an ability to make payments on the account but rather that Granite State was still in business at all.

**D. Causation of Damages**

The final element of a claim under § 523(a)(2)(a) is that the creditor's reliance upon the false representation or pretense must have directly or proximately caused the creditor's damages. See Creta, 271 B.R. at 218. The testimony was clear and unequivocal that Cyr Lumber would not have continued the line of credit if it had known that Granite State filed bankruptcy. For that reason, the Court finds that the Debtor's silence regarding Granite State's bankruptcy proximately caused the damage suffered by Cyr Lumber. Cyr Lumber would not have permitted

11

the Debtor to continue to charge goods and materials to the account during the fall of 2006, in the total amount of $35,582.85 (after applying various payments and credits). Accordingly, the Court concludes that Cyr Lumber has established all of the required elements under § 523(a)(2)(A) and its debt shall be excepted from discharge.

### E. Computation of Damages

Once it has been established that specific credit or property has been obtained by false pretenses, any debt arising therefrom is excepted from discharge, including but not limited to attorney's fees, interest, and costs recoverable on that debt under applicable state law. See Cohen v. De La Cruz, 523 U.S. 213, 218-19 (1998); Voisine v. Sperry Concrete, Inc. (In re Voisine), 2003 BNH 015, at 3-4. As detailed by Cyr Lumber during trial, the outstanding charges as of January 25, 2007, totaled $35,582.85. This amount does not include finance charges for the month of January. The outstanding balance on the account, including finance charges as set forth later in this opinion, shall be excepted from discharge.

Cyr Lumber seeks $21,649.93 in finance charges at the rate of 2% each month from January 1, 2007, through January 1, 2009. The Debtor contends that Cyr Lumber is improperly assessing this interest in violation of New Hampshire law and points to Mast Road Grain & Building Materials Co., Inc. v. Ray Piet, Inc., 126 N.H. 194 (1985), in support of his contention. Cyr Lumber argues the facts of Mast Road are distinguishable from the facts of this case due to a difference in language between the credit agreement signed in Mast Road and the credit agreement signed by Granite State and the Debtor in this case. In Mast Road, the creditor and guarantors signed an agreement that provided for 2% interest per month on any balance that remained unpaid for thirty days after being billed and "[i]f any portion of this account remains unpaid for more than thirty (30) days, [plaintiff] may then ask [debtor-defendants] to pay the

12

entire amount then due immediately and [debtor-defendants] agree to pay all accrued finance charges to date, and all costs of collection, including attorney's fees." Mast Road, 126 N.H. at 195-96.

The court indicated that the calculation of the finance charges depended upon the meaning of the phrase "to date" in the credit agreement and concluded that the finance charges accrued on the date demand was made for immediate payment of the full amount of the unpaid account. Id. at 197. The court found that interpreting the words "to date" to extend beyond the date of demand by the creditor would, in effect, convert the finance charge provisions into a liquidated damages provision. Id. The court refused to make that interpretation "absent a clear expression by the parties that the finance charge is to extend beyond demand or suit for collection." Id. For that reason, the court concluded that once suit was instituted interest damages should have been determined with reference to state statute.

In the instant case, the credit agreement contained the following agreement by Granite State:

> To pay a finance charge of 2% with a minimum charge of $1.00 for all balances remaining unpaid 30 days after month of purchase and every month thereafter . . . [and] in the event any balance, past due or contested, is placed in the hands of a collection agency or attorney for collection, to guarantee payment of all reasonable charges for collection including the amount due and owing for any default.

While the language in the Cyr Lumber agreement is different from the language in Mast Road, the result in this case is not different. The finance charge provisions in the Cyr Lumber agreement are substantively identical to the agreement in Mast Road. Both agreements provided for the finance charge to apply to any balance remaining unpaid after thirty days and for that charge to accrue each month thereafter on any such past due balance. The agreement in Mast

13

Road permitted the creditor the option of demanding immediate payment of any past due amounts. Id. at 197. The Cyr Lumber agreement does not grant Cyr Lumber the right to demand past due balances, but similar to the agreement in Mast Road, the Cyr Lumber agreement does not clearly express an agreement that finance charges continue after demand. Thus, once Cyr Lumber made demand, the finance charges accrued and Cyr Lumber's remedies were limited to those provided by the credit agreement and available under state law, i.e., attorney's fees, collection costs, and statutory interest. See id. at 198.

Under New Hampshire law, the date suit is filed to collect a debt is considered the date of demand upon which statutory interest commences. Id. at 197-98; NH RSA 524:1-a. Cyr Lumber filed suit against the Debtor by a writ dated January 23, 2007. Accordingly, Cyr Lumber shall be entitled to include finance charges through January 22, 2007, and statutory interest from January 23, 2007, as part of the obligation to be excepted from discharge. See NH RSA 524:1-b.

Using the same methodology applied by Cyr Lumber,[2] the Court finds that the 2% finance charge should be applied for a period of twenty-two days to the $35,582.85 balance due on the account after applying the January 25, 2007, credit. This results in a finance charge of $505.05 for the period January 1, 2007, through January 22, 2007, resulting in a total balance due of $36,087.90.

In addition to finance charges through January 22, 2007, Cyr Lumber is entitled to collect prejudgment interest commencing January 23, 2007. The rate of prejudgment interest is determined by the state treasurer each December based upon a statutory formula. NH RSA

---

[2] In calculating its monthly finance charge, it appears Cyr Lumber took the amount due at the beginning of the month, and added to it new charges and subtracted from it new credits, to obtain an ending balance to which it would apply the 2% finance charge.

336:1(II). The rate determined each December is applicable throughout the ensuing calendar year. Id. In this case, prejudgment statutory interest is calculated on the $36,087.90 balance as follows:

| | | | | |
|---|---|---|---|---|
| 2007 | 343 days @ 6.8% | equals | $2,306.14 |
| 2008 | 366 days @ 6.0% | equals | $2,165.27 |
| 2009 | 35 days @ 3.5% | equals | $ 121.10 |
| | | | $4,592.51 |

The total prejudgment statutory interest owed to Cyr Lumber is $4,592.51.

In addition, Cyr Lumber has also incurred $18,931.50 in legal fees[3] and $1,799.44 in costs through January 16, 2009, for a total of $20,730.94 in legal fees and costs attributable to the collection of this debt. The Cyr Lumber credit agreement provides for the recovery of collection costs upon default, including reasonable attorney's fees. Cyr Lumber's attorney's fee request is based upon 86.5 hours of time at an average hourly rate of $218.86. The fees requested amount to just over fifty-two percent of the amount due. The Court finds that the requested fee is unreasonable and excessive when compared to the amount to be collected. A fee equal to one-third of the amount to be collected is reasonable and in line with fees generally charged for commercial collections which require a trial. Therefore, attorney's fees in the amount of $12,029.30 shall be awarded and excepted from discharge. The expenses requested appear reasonable and have not been challenged by the Debtor. Therefore, expenses in the amount of $1,799.44 shall be awarded and excepted from discharge. A total of $13,660.39 for legal fees and expenses shall be included in the total obligation excepted from discharge.

---

[3] Legal fees in the amount of $17,041.50 were incurred through January 6, 2009, the date of trial, and additional legal fees in the amount of $1,890.00 were incurred post-trial.

In summary, the Court finds the Debtor owes Cyr Lumber a total of $54,509.15 computed as follows:

| | |
|---|---|
| Outstanding balance on account (including finance charges through January 22, 2007) | $36,087.90 |
| Legal fees | $12,029.30 |
| Costs | $ 1,799.44 |
| Prejudgment interest | $ 4,592.51 |
| | $54,509.15 |

This amount shall be excepted from discharge.

## IV.  CONCLUSION

For the reasons set forth above, the Court concludes the Debtor's obligation to Cyr Lumber in the amount of $54,509.15 shall be excepted from discharge pursuant to § 523(a)(2)(A) as a debt incurred through false pretenses, i.e., the Debtor used Granite State's credit line post-bankruptcy based upon the false pretense that Granite State was a viable, operating company that would pay the charges on the account on a monthly basis as they became due, and thereby inducing Cyr Lumber to extend credit and supply materials to its detriment. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate judgment consistent with this opinion.

ENTERED at Manchester, New Hampshire.


Date:   February 4, 2009               /s/ J. Michael Deasy
                                       J. Michael Deasy
                                       Bankruptcy Judge